**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 21-10064 |
| | * | Jointly Administered with |
| BAYOU BYWATER LIVING, LLC; | * | CASE NO. 21-10065 |
| WEBSTER STREET HOLDING, LLC; | * | CASE NO. 21-10204 |
| RELDS, LLC; AND | * | CASE NO. 21-10205 |
| SOUTH CLAIBORNE HOLDINGS, LLC, | * | CASE NO. 21-11033 |
| GERARD MCGOVERN | * | |
| | * | SECTION "A" |
| *Debtors* | * | |
| | * | CHAPTER 7 |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OBJECTION TO PROOF OF CLAIM 13 AND MOTION FOR SANCTIONS, DAMAGES, COSTS, FEES

NOW INTO COURT, through undersigned counsel, comes the debtor, Gerard McGovern (hereinafter referred to as "Debtor"), who, pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, objects to the proof of claim thirteen [POC#13], which was filed on December 6, 2021, and the amended proof of claim, which was filed on February 3, 2022, by creditor, Carrollton & Oak, LLC (hereinafter referred to as "LLC"), and moves for sanctions, damages, fees, costs, for the reasons stated herein:

1.

Debtor filed a voluntary petition under Chapter 13 of Title 11 of the United States Code on August 5, 2021. On October 19, 2021, Debtor's case was converted to a Chapter 7 bankruptcy (hereinafter referred to as "Personal Bankruptcy").

2.

Debtor owned four (4) businesses that also filed the following chapter 11 bankruptcy cases that were subsequently converted to Chapter 7 bankruptcy cases (hereinafter referred to as "Business Bankruptcies"):

1. *In Re: Bayou Bywater Living,* (filed on 1/19/21, converted on 4/22/21);
2. *In re Webster Street Holdings, LLC*, (filed on 1/19/21, converted on 5/11/21);
3. *RELDs, LLC*, (filed on 2/18/21, converted on 5/11/21); and
4. *South Claiborne Holdings, LLC,* (filed on 2/18/21, converted on 5/11/21).

3.

Per Court's Order [P-26], which was filed on March 24, 2021, and its Order [P-72], which was filed on October 19, 2021, Debtor's Personal Bankruptcy and Business Bankruptcies were "consolidated for procedural purposes only" to be jointly administered by the Court.

4.

On December 6, 2021, debtor's former business partner, Nidal Jaber (hereinafter referred to as "Jaber"), filed proof of claim thirteen [POC#13] on behalf of creditor, Carrollton & Oak, LLC (hereinafter referred to as "LLC") and alleged that Debtor owed the LLC $2,230.810.46 in debt/damages. On February 3, 2022, Jaber filed an amended proof of claim thirteen on behalf of the LLC and alleged that Debtor actually owed the LLC $4,118,652.02. *See* proof of claim thirteen and amended proof of claim thirteen (hereinafter referred to collectively as "POC"), which are attached hereto as **Exhibit "A"**, *en globo*.

5.

On January 14, 2022, the LLC, through Jaber, also filed an adversary proceeding against Debtor seeking to declare that the debt/damages allegedly owed to LLC should be declared non-dischargeable under 11 U.S.C. §523(A)(4) and 11 U.S.C. §523(A)(6). *See* Complaint, attached hereto as **Exhibit "B"**.

6.

For the reasons discussed, *infra*, Debtor objects to the POC that was filed by LLC and denies that he owes any money or has caused any damages to the LLC and is seeking to have the entire proof of claim stricken from the records and denied. With this Objection, Debtor has attached evidence that clearly proves the LLC and Jaber are committing fraud in knowingly misrepresenting its claims for damages/debt. In addition to intentionally seeking inaccurate damages from Debtor, the LLC/Jaber are also pursuing baseless and frivolous claims for debt/damages from Debtor's estate. As discussed, *infra*, the LLC and Jaber have intentionally ignored evidence and misrepresented information that is clearly inaccurate to scam the Debtor's estate into securing the LLC a windfall from the Debtor's bankruptcy estate. Through their fraudulent actions, the LLC/ Jaber are trying to take advantage of Debtor in his precarious financial position. The evidence and information contained with this Objection will prove that the

LLC/Jaber have intentionally ignored actual evidence that they have received, in bad faith, and, instead, have decided to knowingly pursue overstated, baseless, frivolous, inaccurate, and fraudulent debt/damages from Debtor's estate. As a result of the actions of LLC/Jaber in refusing to amend the POC or provide any evidentiary support for their claims after numerous requests by Debtor's counsel, Debtor is also seeking sanctions, costs, fees, and damages for being forced to pursue this Objection.

## **BACKGROUND**

7.

In 2014, Debtor entered into a 50/50 partnership with Jaber in the LLC for the sole purpose of executing "Lease with Option to Purchase Agreement" for a property that is located at 1200 South Carrollton, New Orleans, LA 70118 (hereinafter referred to as "Subject Property"). *See* Lease with Option to Purchase Agreement (hereinafter referred to as "Lease"), attached hereto as **Exhibit "C"**.

8.

In order to secure the Lease, the LLC had to make a down payment, in the amount $312,500.00, to the lessor/owner of Subject Property, Tommy Ngo (hereinafter referred to as "Ngo"). At the time of securing the Lease, Jaber was unable to cover his 50% portion of the down payment but promised that he would reimburse Debtor as soon as possible. With Jaber's promise of reimbursement, Debtor personally made the entire down payment, in the amount of $312,500.00, to secure the Lease, for the LLC, from Ngo. *See* Cashier's Check, attached hereto as **Exhibit "D"**.

9.

After securing the Lease with the down payment, Jaber owed Debtor $ $156.250.00 (50% of down payment). Even though Debtor made numerous requests for reimbursement after signing the Lease, Jaber never paid Debtor his 50% portion of the down payment.

10.

The partners did not create any operating agreement for the LLC. As a result of the Lease, the LLC became responsible for managing the eight rental units (2 commercial + 6 residential) at the Subject Property. After five years of lease payments, the LLC could then elect to take the Option to Purchase the Subject Property. *See* Lease, Ex. "C".

11.

Immediately after signing the Lease, Jaber skipped town and left the country, leaving Debtor on his own to manage the rental property and cover all overhead/expenses on behalf of the LLC. Over the next few years, Jaber intentionally ignored and neglected his duties and responsibilities of the LLC. Jaber ignored all requests from Debtor for reimbursement of the down payment.

12.

Once Jaber left the country immediately after signing the Lease, Debtor had no choice but to attempt to manage the rental property and act in the best interest of the LLC by maintaining its Lease obligations. Under the Lease, the LLC was required to make a monthly payment to Ngo and cover all utilities, taxes, insurances, as well as handling any maintenance/repairs that became necessary.

13.

In its Complaint and POC, Jaber asserts a variety of allegations regarding improper actions taken by Debtor that were breaches of his fiduciary duty to the LLC. As a result of his alleged improper actions, LLC/Jaber are seeking $4,118.652.02 in damages/debt from Debtor's bankruptcy estate. As reflected in its amended POC, the LLC's alleged claims for damages are broken down as follows:

- $1,858,400.00 in "total lost rent";
- $1,000,000.00 in "lost property value";
- $10,784.19 in "cured water bills (defaults);
- $248,133.83 in "cured past due rents and NSF checks"
- $1334.00 in "capital one account charge off fee"
- $1,000,000.00 in "attorney's fees" through July 2021.

See POC, Ex. "A". As evidenced by the information and documentation attached with this Objection, the LLC is intentionally and knowingly seeking claims for damages/debt that are overstated, fraudulent, baseless, inaccurate, and frivolous. Therefore, Debtor objects to the POC and respectfully requests that this Honorable Court deny the POC. Additionally, as a result of the fraud being committed with the POC and adversary proceeding, Debtor seeks sanctions, costs, fees, and damages for being forced to bring this Objection.

## OBJECTIONS TO CLAIMS

### A. TOTAL LOST RENT

14.

The LLC (Jaber) is seeking the gross amount of rental revenue that the LLC should have received during the months that the Subject Property was being managed by Debtor. Debtor managed the property almost immediately upon signing the Lease. Due to Jaber's chronic absence as a partner and member of the LLC, Debtor collected all rental revenue on the Subject Property for approximately five years, until he was removed as Manager in April, 2019. At most, the amount of months that Debtor should have to pay the LLC for rental revenue it received should be sixty (60) months. Although McGovern was removed as manager of the LLC in April, 2019, the LLC/Jaber are attempting to claim that Debtor should be responsible for rental revenue that should have been received for 92 months, up until 1/1/2022.

15.

Most importantly, the LLC/Jaber are knowingly and intentionally "double-dipping" on the damages that it is seeking from Debtor, as they have also secured a judgment against the owner of property, Ngo, for the same exact damages due to wrongfully evicting the LLC from the Subject Property. In the Civil District Court lawsuit between Ngo and LLC for wrongful eviction, the LLC actually secured a judgment for the same exact damages that it is seeking from Debtor. *See* Ngo/LLC Judgment, attached hereto as **Exhibit "E"**. As a result of this Judgment, the LLC cannot seek any damages/attorney fees/lost rental revenue from the Debtor that it has been awarded due to the wrongful eviction of the LLC, around April, 2019. As a result of securing a judgment from the owner of the Subject Property for wrongfully evicting the LLC from the property, Debtor

cannot be held respomsible for any damages or debt that is owed by Ngo for the wrongful eviction. The LLC is fraudulently and knowingly double-dipping in an attempt to secure an improper windfall from the Debtor's Bankruptcy estate.

16.

In addition to double dipping by attempting to seek the same damages from Ngo and the Debtor, the LLC/Jaber are also attempting to hold Debtor accountable for any revenue that was not received from the rental units over the five (5) years that he managed the Subject Property even though there were circumstances outside of his control that caused some units to be un-rented for specific months. However, to keep things un-complicated for now, Debtor will prove that, even under the best-case scenario of every unit being rented and paid, the LLCs claims for loss rental revenue for 60 months on the units is still overstated.

17.

The LLC has previously received evidence from Debtor and other sources that evidences it is intentionally and knowingly overstating its claim for total rental revenue lost. For example, the LLC/Javer have received copies of leases on the Subject Property that detail the amount of rent that the LLC could have received. *See* leases, attached hereto as **Exhibit "F"**, *en globo*. As evidenced by the attached leases and rental evidence, under a best case scenario, the LLC could have only had a right to claim "total loss rent" for 60 months, at most, (reserving Debtor's right to supplement with evidence of months that the units were not rented due to circumstances outside of his control), since Debtor cannot also be held liable for the same amount of damages caused by the wrongful eviction of Ngo. Specifically, at most, the LLC has a right to claim the following rental revenue lost under a perfect scenario, with all units rented:

    PHO - $3600 per month for 60 months = $216,000.00
    Nail Salon - $2000.00 per month for 60 months = $120,000.00
    Unit 2A – $1095 for 60 months = $65,700.00

      Unit 2B - $1095 for 6 months and then $1295.00 for 54 months = $76,500.00
      Unit 2C - $1095 for 60 months = $65,700.00
      Unit 3A - $1095 for 60 months = $65,700.00
      Unit 3B - $1095 for 36 months, then $1295 for 12 months, then $1500 for 12 months= $72,960.00
      Unit 3C - $1095 for 36 months, then $1295 for 12 months, then $1500 for 12 months= $72,960.00

See leasesAs evidenced by the above calculations, under the "best-case scenario", with every unit rented for the entire five years that the Subject Property was allegedly under Debtor's management, the maximum amount of total rental loss that the Debtor could possibly owe the LLC is $755,520. Notably, the Debtor is reserving his right to prove that the total rental revenue that could have been received is even lower than the "best-case scenario", due to months that no rental revenue was received due to circumstances including, but not limited to, fire damage; tun-over between tenants; tenants failure to pay rent, resulting in Debtor's eviction; etc. At the hearing on this Objection, Debtor intends to supplement the evidence with proof of every month that units did not receive rental income for reasons outside of his control.

18.

Most importantly, Debtor has a right o reimbursement for all overhead/expenses that he covered on behalf of the LLC during his management. Although the LLC/Jaber have received evidence of expenses covered by Debtor, the LLC/Jaber has refused to offer any reimbursement credits for any expenses covered by Debtor. In a showing of egregious bad-faith, the LLC's proof of claim intentionally fails to include any reimbursement/credits to Debtor for payments that he covered on behalf of the LLC, including the payments made by Debtor to Ngo, for the lease; utilities on the Subject Property (energy + water); repairs and maintenance costs; property insurances; and property taxes. See evidence of overhead covered by Debtor, attached hereto as **Exhibit "G"**, *en globo*. Debtors reseves his right to supplement the evidence of any overhead/expenses that he covered to secure the proper reimbursement from the LLC. Although the LLC/ Jaber have received clear evidence of expenses covered by Debtor, the LLC/Jaber have

refused to accept such evidence and offer any reimbursement/credit to Debtor as a result of his 50% ownership in the LLC. Jaber signed the POC, under penalty of perjury, that the damages being sought were accurate. However, the LLC/Jaber are knowing submitting fraudulent claims for damages/debt that are clearly overstated in an attempt to secure a windfall from the Debtor's bankruptcy estate.

19.

Once the LLC/Jaber give the proper credit and reimbursement to Debtor for any overhead/expenses that he covered on behalf the LLC, then the total rental loss revenue will decrease even more significantly. Finally, after reducing the amount of total loss rental revenue to 60 months and to the amounts reflected in the leases, and after then giving credit/reimbursement to Debtor for any amounts he covered on behalf the LLC, then the total rental revenue needs to be further reduced, by 50%, as a result of the 50/50 partnership. After also giving 50% reimbursement finally for Debtor's down payment, Debtor believes that the LLC actually owes him money. Regardless, the evidence is clear that the LLC/ Jaber are trying to take advantage of the Debtor and seek damages that are fraudulent/overstated and intentionally inaccurate.

B. **PROPERTY LOSS DAMAGES**

20.

Once again, the LLC is attempting to "double-dip" by seeking damages that are identical to the damages it secured in its judgment against Ngo.

21.

Additionally, Debtor objects to owing the LLC any damages for loss of property value. The LLC does not have a right to seek damages for loss in property value for a property that it did not own at the time the actions allegedly took place. At the time of Debtor's management, the

LLC possessed a Lease and did not own the property. In Louisiana, tenants do not have the right to seek damages for properties that they do not own. Therefore, the LLC/Jaber are knowingly pursuing frivolous claims with no legal basis.

22.

Even if the LLC had a right to loss of property value damages, Debtor denies that the damages were caused by him. In fact, the Debtor was the only partner that performed any type of repairs during the existence of the LLC and Lease. Although Jaber received information and knowledge that repairs were needed and that the LLC had obligations under the Lease, Jaber refused to perform any repairs and actively ignored his duties. Moreover, even if the LLC has a right to loss of property value damages, the damages to the property existed prior to the Lease.

22.

Debtor objects any claim that his actions caused $1 million in decreased value on the property. The LLC attempts to claim that Debtor's actions in failing to make repairs and failing to rent out the units every month caused the value to decrease in value by $1 million. This claim has no evidentiary basis. Even if it did, Jaber can be held liable for the same exact reasons.

### C. ATTORNEY FEES

23.

The LLC committed blatant fraud when it claimed in its proof of claim that it was owed $1 million in attorney fees. Despite numerous requests by counsel, the LLC has refused to provide any proof of its attorney fees. The LLC has attached no evidence to support this large claim for attorney fees. At the time of filing the proof of claim, the LLC submitted a fraudulent claim for $1 million in attorney fees and has refused to provide any evidence to prove otherwise. Without

any evidence, Debtor must believe that the LLC is again attempting to double-dip by seeking fees for which Ngo is also being held liable. For example, the Debtor is not responsible for fees that were caused by the wrongful eviction suit of Ngo.

24.

The LLC does not have a right to any attorney fees from Debtor. The Complaint being pursued by LLC is a waste of time since Debtor does not owe any damages to the LLC. For this reason and for more examples that will be shown at the hearing on this Objection Debtor also believes that the LLC is intentionally failing to mitigate its damages to try to cause their claims to increase further and further, to try to punish the Debtor.

## **CONCLUSION AND PRAYER FOR RELIEF**

The LLC/Jaber continue to commit blatant fraud in seeking overstated, inaccurate, and baseless damages in its proof of claim. Following the proper calculations and reimbursements, the LLC actually owes money to the Debtor. Additionally, it has no right to damages related to loss in property value that it did not own. Even more egregiously, the LLC/Jaber and his attorneys have attempted to take advantage of the Debtor's bankruptcy and financial situation, by knowingly seeking a claim for $1 million in attorney fees, while refusing to turn over any evidence in support of their claim.

WHEREFORE, for these reasons, Debtor respectfully prays for the proof of claim to be denied and stricken from the case; for the Complaint to be declared moot and dismissed, and for sanctions, damages, costs, and fees, for being forced to pursue this Objection, and for all other relief this Honorable Court deems due and appropriate..

New Orleans, Louisiana, this 29th day of August, 2022.

Respectfully Submitted:

        */s/ Jonathan R. DeTrinis*
        Jonathan R. DeTrinis #33536
        **DeT Law Firm, LLC**
        4000 Bienville Street, Suite C-1
        New Orleans, LA 70119
        Ph: (504) 722-9711
        Fx: (504) 327-5309
        Jon@DeTlawfirm.com
        Attorney for the Debtor